## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ASHLEY SIGLEY

                 Plaintiff,

        v.

TEVA PHARMACEUTICALS, USA, INC.;
400 Interpace Parkway
Parsippany, New Jersey 07054

And

TEVA WOMEN'S HEATH, LLC;
5040 Duramed Road
Cincinnati, Ohio 45213

And

TEVA BRANDED PHARMACEUTICAL
PRODUCTS R&D, INC.
41 Moores Road
Malvern, Pennsylvania 19355

And

THE COOPER COMPANIES, INC.;
6101 Bollinger Canyon Road, Suite 500
San Ramon, California 94583

And

COOPERSURGICAL, INC.,
95 Corporate Drive
Trumbull, Connecticut 06611,

             Defendants.

ELECTRONICALLY
FILED
Nov 13 2020
U.S. DISTRICT COURT
Northern District of WV

**COMPLAINT AND JURY DEMAND**

    CIVIL ACTION:  1:20-cv-257
    Judge Irene M. Keeley

COMES NOW Plaintiff, Ashley Sigley, through her counsel, Motley Rice, LLC, files this Complaint against Defendants Teva Pharmaceuticals, USA, Inc., Teva Women's Health, LLC, Teva Branded Pharmaceutical Products R&D, Inc., The Cooper Companies, Inc., and CooperSurgical, Inc. (collectively hereinafter "Defendants"), jointly and severally, as the companies and/or successors in interest to the companies that designed, developed, manufactured, tested, labeled, packaged, distributed, marketed and/or sold the ParaGard IUD that was inserted into Plaintiff, and in women throughout the United States. Accordingly, Plaintiff alleges and states as follows:

## I.    <u>INTRODUCTION</u>

1. This is an action for damages relating to the Defendants' design, manufacture, surveillance, sale, marketing, advertising, promotion, labeling, packaging, and distribution of the ParaGard Intrauterine medical device ("ParaGard IUD or ParaGard") intended to provide long-term, yet reversible, "non-surgical" contraception for women.

2. The Defendants have a responsibility to produce a safe and effective product, as well as the responsibility for monitoring the safety of the product in the real world. The Defendants have superior, and in many cases exclusive, access to the relevant safety and efficacy information, including post-marketing complaints and data.

3. To fulfill this essential responsibility, each Defendant must vigilantly monitor all reasonably available information. The manufacturer must closely evaluate the post-market clinical experience with ParaGard and timely provide updated safety and efficacy information to the U.S. Food and Drug Administration ("FDA") and to consumers. The Defendants also must carefully

monitor its own quality controls post-market to ensure that the ParaGard uniformly conforms with its representations and warranties and with specifications of approval.

4.   After the FDA approved the ParaGard for sale and it was sold on the market, Defendants became aware of serious safety issues and adverse events associated with the ParaGard. In particular, the Defendants knew or should have known that ParaGard has a susceptibility to break in utero or upon removal, resulting in serious injuries to patients.

5.   This action arises from Defendants' failures and omissions in the design, manufacture, surveillance, sale, marketing, advertising, promotion, labeling, packaging, and distribution of the ParaGard IUD.

6.   Defendants' conduct, as set forth below, violated their obligations under federal and state law.

## II.    THE REGULATORY HISTORY OF THE PARAGARD IUD NEW DRUG APPLICATION ("NDA")

7.   On November 15, 1984, the FDA approved the new drug application ("NDA") pursuant to § 505(b) of the federal Food, Drug, and Cosmetic Act for ParaGard, dated September 4, 1984. The NDA was submitted to the FDA by The Population Council. Defendants, holding the NDA, must comply with the requirements for an approved NDA set forth under the federal regulations, including, but not limited to 21 C.F.R. §§314.80 and 314.81.

8.   On November 9, 2005, Duramed Pharmaceuticals, Inc., a subsidiary of Barr Pharmaceuticals, Inc., acquired FEI Women's Health, LLC, which had earlier acquired the ParaGard NDA from The Population Council.

9.   In 2008, Teva USA became the owner of ParaGard NDA when it acquired Duramed Pharmaceuticals, Inc., a division of Barr Pharmaceuticals, Inc., through its purchase of Barr Pharmaceuticals. When Teva USA acquired Duramed, it also acquired Duramed's manufacturing

facilities, sales force and responsibility for maintaining and updating the labeling for ParaGard and adhering to the mandatory reporting requirements as set forth in 21 C.F.R. §§ 314.80 and 314.81.

10. Teva USA manufactured the ParaGard through Duramed, which held the ParaGard NDA and designed, developed, manufactured, tested, labeled, packaged, distributed, marketed and/or sold the ParaGard IUD through September 2009. In September 2009, Teva USA changed the name of Duramed Pharmaceuticals, Inc. to Teva Women's Health, Inc., a wholly owned subsidiary of Teva USA. A new entity was not created and no entities were dissolved.

11. From September 2009 to August 2017, Teva Women's Health, Inc. held the ParaGard NDA, and designed, developed, manufactured, tested, labeled, packaged, distributed, marketed and/or sold the ParaGard IUD throughout the United States. In August 2017, Teva Women's Health, Inc. converted into Teva Women's Health, LLC.

12. From August 11, 2017 to November 1, 2017, Teva Women's Health, LLC held the ParaGard NDA and designed, developed, manufactured, tested, labeled, packaged, distributed, marketed and/or sold the ParaGard IUD.

13. On November 1, 2017, the Cooper Companies acquired the Teva Women's Health, LLC assets, including the ParaGard NDA. From November 1, 2017 to the present, the Cooper Companies and its subsidiary CooperSurgical hold the ParaGard NDA and design, develop, manufacture, test, label, package, distribute, market and/or sell the ParaGard IUD throughout the United States.

### III.    PARTIES

14.       At all times relevant to this action, Plaintiff, was an individual, citizen, and resident of the State of West Virginia, in Preston County.

15.     Defendant Teva Pharmaceuticals USA, Inc. ("Teva Pharmaceuticals" or "Teva USA") is a Delaware corporation with headquarters located at 400 Interpace Parkway, Parsippany, New Jersey.

16.     Defendant Teva Women's Health, LLC is a Delaware limited liability company with headquarters located at 5040 Duramed Rd. Cincinnati, Ohio and is and/or was a wholly owned subsidiary of Defendant Teva USA.    Teva Women's Health, LLC is the product of an August 2017 entity conversion pursuant to Del. Code Ann. Tit. 8, 266, whereby Teva Women's Health, Inc., converted into Teva Women's Health, LLC.    Previously, in September 2009, Duramed Pharmaceuticals, which had held the ParaGard NDA since 2005, changed its name to Teva Women's Healthcare, Inc. These entities – Duramed Pharmaceuticals (November 2005-September 2009), Teva Women's Healthcare, Inc. (September 2009-August 2017), and Teva Women's Healthcare, LLC (August -September 2017) are referred to herein collectively as "Teva Women's Health".

17.     Teva Branded Pharmaceutical Products R&D, Inc., is a Delaware corporation with its principal place of business at 41 Moore Road, Malvern PA, 19344.

18.     In September 2017, Teva Women's Health LLC sold all of its assets, including the ParaGard IUD, to the Cooper Defendants. Thereafter, Teva Women's Health LLC became a holding company with no tangible assets.

19.     Defendant Cooper Companies, Inc., ("Cooper Companies") is a Delaware corporation with headquarters at 66101 Bollinger Canyon Road, Suite 500, San Ramon, California.

20.     Defendant CooperSurgical, Inc., ("Cooper Surgical") is a Delaware corporation with headquarters at 95 Corporate Drive in Trumbull, Connecticut and a subsidiary of Defendant

Cooper Companies (collectively Defendants Cooper Companies and CooperSurgical are referred herein as the "Cooper Defendants").

21.     CooperSurgical purchased assets and global rights and business of the ParaGard IUD in September 2017 for $1.1 Billion, including their manufacturing facility in upstate New York. The Cooper Companies, as an inducement for Teva to enter into the Assets Purchase Agreement, guaranteed CooperSurgical obligations under the Assets Purchase Agreement.

22.     At all relevant times, each Defendant acted in all aspects as the agent of each other.

23.     Cooper Defendants knew or should have known that the transfer and conversion of Teva Women's Health, Inc. into Teva Women's Health LLC was intended to thwart potential creditors from having a claim against Teva Women's Heath, Inc. or Teva Women's Health, LLC.

24.     Therefore, the Cooper Defendants are liable pursuant to the Federal Consumer Protection Acts and West Virginia Consumer Credit and Protection Act and/or other applicable West Virginia statutes.

25.     The liability of these companies has passed on through various business instruments and now lies with Defendants.

26.     At times relevant and material hereto, Defendants held the ParaGard NDA and engaged in the business of, or were successors-in-interest to entities engaged in the business of, researching, developing, designing, formulating, licensing, manufacturing, testing, producing, processing, assembling, packaging, inspecting, distributing, selling, labeling, monitoring, marketing, promoting, advertising, and/or introducing into interstate commerce throughout the United States, in the State of West Virginia, either directly or indirectly, through third-parties, subsidiaries and/or related entities, the ParaGard IUD. At times relevant to this action, Defendants communicated with the United States Food and Drug Administration and the United States

Department of Health and Human Services regarding the regulation, sale, use, and safety concerns related to ParaGard IUDs, which includes managing product recalls, investigating adverse events from ParaGard IUD users, and performing mandatory reporting to the FDA regarding ParaGard IUD. At times relevant to this action, Defendants were involved in regulatory and medical communications, including but not limited to communications with physicians, doctors, and other medical personnel. This conduct led to activities giving rise to the causes of action alleged herein.

27.     At all times alleged herein, Defendants were authorized to conduct or engage in business within the State of West Virginia and supplied the ParaGard IUD within the state of West Virginia. Defendants received financial benefit and profits as a result of designing, manufacturing, marketing, advertising, selling and distributing the ParaGard IUD within the State of West Virginia.

28.     The combined acts and/or omissions of each Defendant resulted in indivisible injuries to Plaintiff. Each of the above-named Defendants is a joint tortfeasor and is jointly and severally liable to Plaintiff for the negligent acts and omissions alleged herein. Each of the above-named Defendants directed, authorized or ratified the conduct of each and every other Defendant.

### IV.     JURISDICTION AND VENUE

29.     The Court has subject matter jurisdiction over this matter because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. § 1332. Specifically, as alleged in more detail in the PARTIES section, Plaintiff is a citizen of the State of West Virginia, while Defendants are citizens of Ohio, New Jersey, Pennsylvania, Connecticut and California.

30.     The Court has personal jurisdiction over Defendants because they have sufficient minimum contacts such that asserting jurisdiction over the Defendants does not offend traditional

notions of fair play and substantial justice. *International Shoe v. Washington*, 326 U.S. 310, 325 (1945). The Defendants have conducted and continue to conduct substantial and systematic business activities related to ParaGard device in this jurisdiction. Such activities include, but are not limited to: (a) sales of the ParaGard IUD; (b) hiring, training, and deploying employees, including sales representatives, in this jurisdiction; (c) advertising and marketing of ParaGard in this jurisdiction; (d) maintenance of company files and equipment relating to the ParaGard IUD in this case, in this jurisdiction; (e) payment of employee salaries in this jurisdiction; and (f) maintenance of a website directed to all states, including West Virginia. The Defendants also committed tortious acts within the State of West Virginia and caused injury to persons or property within the State of West Virginia arising out of acts or omissions by Defendant outside this state at or about the time of the Plaintiff's injury, while the Defendants were engaged in solicitation or service activities within the State of West Virginia; and/or, while products, materials, or things processed, serviced, or manufactured by the Defendants were used or consumed within West Virginia in the ordinary course of commerce, trade, or use.

31.      Venue is proper in this District because Plaintiff currently and at the time of implant, resided in this District. See 28 U.S.C. § 1391(b) (2). The Defendants' ParaGard IUD was marketed, sold, and inserted in this District.

## V.    FACTUAL ALLEGATIONS

32.      The ParaGard IUD is an intrauterine device that is intended to provide long-term, yet temporary non-surgical birth control.

33.      The ParaGard IUD is a T-shaped plastic frame made of polyethylene and barium sulfate that is inserted into the uterus by a healthcare provider. Copper wire coiled around the IUD is intended to interfere with the sperm transport and fertilization of an egg. A monofilament

polyethylene thread is tied through the tip, resulting in two white threads, which is intended to aid in the detection and non-surgical removal of the IUD.

34.     Defendants market and have marketed the ParaGard IUD as providing "continuous pregnancy prevention for as short or long as [the user] want[s]—up to 10 years."

35.     Defendants further market and have marketed that the ParaGard IUD can be removed anytime sooner than ten (10) years if the user decides she wants to become pregnant and "may become pregnant as soon as ParaGard is removed."

36.     ParaGard is heavily marketed as being "reversible," "non-surgical," and can be removed by a healthcare provider "during a routine office visit in just a few minutes."

37.     The marketing and promotional efforts of Defendants, their advertisers, and sales force served to overstate the benefits of ParaGard IUD and minimize and downplay the risks. These promotional efforts and marketing statements were made while Defendants negligently and fraudulently withheld important safety information from healthcare providers and the public.

38.     Prior to Plaintiff being inserted with the ParaGard IUD, Defendants knew and should have known that the drug was defective and unreasonably dangerous.

39.     Defendants knew or should have known that ParaGard can and does cause serious harm to individuals who use it, due to the risk of the ParaGard potentially breaking in utero and/or upon removal.

40.     Defendants knew of these risks from the trials they performed, their post-marketing experience and complaints, third party studies, and their own analysis of these studies, but took no action to adequately warn or remedy the defects and instead concealed, suppressed and failed to disclose or fix this danger.

41.     The product warnings for ParaGard were vague, incomplete, or otherwise wholly inadequate to alert prescribing physicians and patients to the actual risks associated with ParaGard, including, but not limited to, the risk of device breakage that may result in surgical intervention, surgical intervention requiring removal of internal organs, and/or loss of reproductive health and fertility.

42.     Defendants' marketing and promotion, through its own website, sought to reassure physicians and patients that Defendants' longstanding record of quality and safety assurance.

43.     Based upon these representations, upon which Plaintiff and her physician relied, Plaintiff had the ParaGard inserted, believing it would be safe, effective, and reversible, for the entire duration it was inserted and upon removal.

44.     Although ParaGard IUD is a device and Defendants market the ParaGard IUD as containing no hormones or other drugs, it is regulated by the FDA as a "drug" and Defendants are required to adhere to the Code of Federal Regulations, Title 21.

45.     Defendants are required to promptly review all adverse drug experience information obtained or otherwise received by the applicant from any source, foreign or domestic, including information derived from commercial marketing experience, post-marketing clinical investigations, post-marketing epidemiological/surveillance studies, reports in scientific literature, and unpublished scientific papers. Defendants, as NDA applicants and holders, must submit all follow-up information on reports forwarded to the applicant by the FDA to the FDA. Defendants must develop written procedures for the surveillance, receipt, evaluation and reporting of post-marking adverse drug experiences pursuant to FDA. 21 C.F.R. § 314.80(b).

46.     Defendants must submit to the FDA adverse drug experience information. 21 C.F.R. § 314.80(c). Adverse drug experiences are any adverse event associated with the use of a

drug in humans, whether or not considered drug related, including any failure of expected pharmacological action. 21 C.F.R. §314.80(a).

47.     Despite these obligations, Defendants failed to adequately communicate and report to the FDA the injuries associated with the ParaGard IUD, which resulted in inadequate warnings for physicians and patients.

48.     On July 25, 2019, Defendants received a letter from the FDA admonishing Defendants for marketing a "false or misleading representation[] about the risks associated with ParaGard," stating:

> "[t]he TV ad misbrands ParaGard within the meaning of the Federal Food, Drug and Cosmetic Act and makes its distribution violative. 21 U.S.C. 352(n); 331(n). 21 C.F.R. 202.1(d) (1); (e) (5). This violation is concerning from a public health perspective because it creates a misleading impression about the safety of ParaGard."

## VI.    PLAINTIFF'S USE OF PARAGARD

49.     Upon information and belief, on or about February or March 2020, Plaintiff, at the young age of 19, presented to her healthcare provider at Mon Health Obstetrics & Gynecology located at 2000 Mon Health Medical Park Drive, Morgantown, West Virginia, to discuss options for temporary contraception.

50.     Plaintiff, replying on the representations made in the ParaGard brochures, videos, television and/or print advertisements as to the risks and benefits, as well as relayed by her physician, chose ParaGard IUD over a hormonal oral contraceptive or other temporary birth control method.

51.     Plaintiff, a young and healthy woman, wanted ParaGard because it was a reversible form of birth control that would allow her to conceive in the future.

52.     On March 9, 2020, pursuant to ParaGard's instructions provided by Defendants, Plaintiff's healthcare provider inserted a ParaGard IUD into Plaintiff's uterine cavity at Mon

Health Obstetrics & Gynecology located at 2000 Mon Health Medical Park Drive, Morgantown, West Virginia.

53.    On July 13, 2020, after deciding she no longer wanted temporary birth control and wanted the Paragard IUD removed, Plaintiff went to her healthcare provider at Mon Health Obstetrics & Gynecology, located at 2000 Mon Health Medical Park Drive, Morgantown, West Virginia, for removal.

54.    On July 13, 2020, Jane Koch, CRNP, MS, of Mon Health Obstetrics & Gynecology attempted to remove the ParaGard as instructed by Defendants, by grasping the ParaGard by the forceps and pulling gently.  Despite following the instructions provided by Defendants, the ParaGard IUD was unable to be removed.

55.    Following the first unsuccessful attempt at removal, the following day, on July 14, 2020, Plaintiff returned to her healthcare provider at Mon Health Obstetrics & Gynecology and was seen by Dr. Erica Arthurs, MD.  Dr. Arthurs attempted to remove the ParaGard as instructed by Defendants, by grasping the ParaGard by the forceps and pulling gently.  Despite following the instructions provided by Defendants, the ParaGard was unable to be removed.

56.    On or about July 14, 2020, diagnostic imaging was then performed and revealed that Plaintiff's ParaGard IUD was broken inside of Plaintiff's uterine cavity.

57.    On August 5, 2020, while Plaintiff was under anesthesia, Dr. Erica Arthurs attempted to remove the ParaGard IUD vaginally from Plaintiff's uterine cavity at Mon Health Preston Memorial Hospital located at 150 Memorial Drive, Kingwood, West Virginia; however, the ParaGard IUD was unable to be removed in its entirety and only a portion of the ParaGard IUD was removed.

58.     Due to continued pelvic pain, Plaintiff continued to follow-up with her healthcare provider at Mon Health Obstetrics & Gynecology. Diagnostic imaging revealed the broken piece of the ParaGard IUD was embedded in Plaintiff's uterine cavity.

59.     On or about September 24, 2020, due to severe abdominal and pelvic pain, Plaintiff presented to J.W. Ruby Memorial Hospital located at 1 Medical Center Drive, Morgantown, West Virginia. Plaintiff was evaluated and diagnostic imaging again revealed the broken piece of the ParaGard IUD was embedded in Plaintiff's uterine cavity.

60.     Plaintiff was advised by her healthcare provider that she needed surgical intervention to remove the broken piece of the ParaGard IUD.

61.     On October 9, 2020, Dr. Ryan Heitmann, D.O. through a large abdominal incision, surgically removed the broken and embedded piece of the ParaGard IUD from Plaintiff's uterine cavity at J.W. Ruby Memorial Hospital located at 1 Medical Center Drive, Morgantown, West Virginia.

62.     Plaintiff and her healthcare providers were provided with no warning from Defendants of the risk of ParaGard failure and injury, nor were Plaintiff and her healthcare providers provided with adequate warning of the risk of removal of ParaGard. This information was known or knowable to Defendants.

63.     On information and belief, Plaintiff used the ParaGard IUD manufactured, packaged, marketed, sold and/or distributed by Defendants. The ParaGard reached Plaintiff without substantial change in its condition.

64.     On information and belief, Plaintiff suffered severe and permanent physical and emotional injuries, endured pain and suffering, required surgical removal of the broken piece of

the device, and has suffered economic loss, including incurring significant expenses for medical care and treatment.

65.     As a result of said injuries, Plaintiff suffered significant bodily and mental injuries, including but not limited to, pain, suffering, mental anguish, loss of enjoyment of life, medical expenses and other out of pocket losses and loss of income.

66.     At all relevant times, Defendants had knowledge that there was a significant increased risk of adverse events associated with ParaGard, including arm breakage, and despite this knowledge Defendants continued to manufacture, market, distribute, sell, and profit from sales of ParaGard.

67.     The Defendants continue to manufacture, market, distribute, sell and profit from sales of ParaGard.

68.     Despite such knowledge, Defendants knowingly, purposely, and deliberately failed to adequately warn Plaintiff, patients, consumers, medical providers, and the public of the increased risk of serious injury associated with using ParaGard.

69.     On information and belief, Plaintiff's prescribing physician would not have prescribed ParaGard to Plaintiff, would have changed the way they warned Plaintiff about the signs and symptoms of serious adverse effects of ParaGard, and discussed with Plaintiff the true risks of arm breakage and resulting injuries and complications had Defendants provided said physicians with an appropriate and adequate warning regarding the risks associated with the use of the ParaGard IUD.

70.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered severe and permanent physical and emotional injuries, endured pain and suffering, required surgical

removal of the broken piece of the device, and has suffered economic loss, including incurring significant expenses for medical care and treatment.

71.　　As a direct result of Plaintiff's use of the ParaGard, Plaintiff suffered from having a broken arm of the ParaGard in her, causing her damage, including but not limited to pain, suffering, mental anguish, loss of enjoyment of life, medical expenses and other out of pocket losses and loss of income.

## VII.　　CAUSES OF ACTION

### COUNT I: NEGLIGENCE

72.　　Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

73.　　At times relevant, Defendants were in the business of designing, developing, setting specifications, manufacturing, marketing, selling and/or distributing the ParaGard IUD, including the one that was inserted into the Plaintiff.

74.　　Defendants had a duty to exercise reasonable and ordinary care in the manufacture, design, labeling, instructions, warnings, sale, marketing, safety surveillance and distribution of the ParaGard so as to avoid exposing others to foreseeable and unreasonable risks of harm.

75.　　Defendants breached their duty in that they failed to warn Plaintiffs and their physicians by not reporting the risk of serious defects and life-altering complications described herein that Defendants knew or should have known were associated with ParaGard prior to the time of Plaintiff's insertion.

76.　　Specifically, Defendants breached these duties and violated federal and state law by, *inter alia*: receiving and failing to warn of or report complaints about ParaGard to the FDA or the public and receiving and failing to warn or report to the FDA and the medical community their

knowledge and information regarding complaints about ParaGard, including but not limited to instances of breakage, instances of perforation, and instances of migration.

77.    Defendants knew that the ParaGard could break upon removal and failed to warn Plaintiff of this potential injury.

78.    Defendants knew or reasonably should have known that the ParaGard IUD was dangerous or likely to be dangerous when used in its intended or reasonably foreseeable manner.

79.    At the time of the manufacture and sale of the ParaGard IUD, Defendants knew or should have known that the ParaGard IUD was designed and manufactured in such a manner so as to present an unreasonable risk of the fracture of the arm of the drug upon removal.

80.    At the time of the manufacturer and sale of the ParaGard IUD, Defendants knew or should have known that the ParaGard IUD was designed and manufactured to have unreasonable and insufficient strength or structural integrity to withstand normal placement and subsequent removal.

81.    At the time of the manufacture and sale of the ParaGard IUD, Defendants knew or should have known that using the ParaGard IUD for its intended use or in a reasonably foreseeable manner created a significant risk of a patient suffering severe injuries, including but not limited to, additional surgeries and/or medical procedures in order to remove the fragmented product, even leading to hysterectomy.

82.    Defendants knew or reasonably should have known that the consumers of the ParaGard IUD would not realize the danger associated with using the drug for its intended use and/or in a reasonably foreseeable manner.

83.     Defendants breached their duty to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution and sale of the ParaGard IUD in, among others, the following ways:

a.     Designing and distributing a product in which they knew or should have known that the likelihood and severity of potential harm from the product exceeded the burden of taking measures to reduce or avoid harm;

b.     Designing and distributing a product in which they knew or should have known that the likelihood and severity of potential harm from the product exceeded the likelihood of potential harm from other drug available for the same purpose;

c.     Failing to use reasonable care in manufacturing the product and producing a product that differed from their design or specifications;

d.     Failing to use reasonable care to warn or instruct Plaintiff, Plaintiff's healthcare providers or the general health care community about the ParaGard IUD's substantially dangerous condition or about facts making the product likely to be dangerous, including pre-and post-sale;

e.     Failing to perform reasonable pre-market and post-market testing of the ParaGard IUD to determine whether or not the product was safe for its intended use;

f.     Failing to provide adequate instructions, guidelines, and safety precautions, to those persons to whom it was reasonably foreseeable would recommend, use, insert and remove the ParaGard IUD;

g.      Advertising, marketing and recommending the use of the ParaGard IUD, while concealing and failing to disclose or warn of the dangers known by Defendants to be connected with and inherent in the use of the ParaGard IUD;

h.      Representing that the ParaGard IUD was safe for its intended use when in fact, Defendants knew and should have known the product was not safe for its intended purpose;

i.      Continuing manufacture and sale of the ParaGard IUD with the knowledge that the IUD was dangerous and not reasonably safe, and failing to comply with the FDA good manufacturing regulations;

j.      Failing to use reasonable and prudent care in the design, research, manufacture, and development of the ParaGard IUD so as to avoid the risk of serious harm associated with the use of the IUD;

k.      Failing to establish an adequate quality assurance program used in the manufacturing of the ParaGard IUD;

l.      Failing to establish and maintain an adequate post-marketing surveillance program for the ParaGard IUD;

m.      Failing to adequately and correctly report safety information relative to the ParaGard product resulting in inadequate warnings;

n.       Failing to provide adequate and continuous warnings about the inherent danger of breakage with the ParaGard upon removal;

o.      Failing to adhere to the post-marketing reporting of adverse drug experiences including, but not limited to, 21 C.F.R. §§314.80 and 314.81;

p.    Putting ParaGard on the market without first warning consumers, including patients and physicians, of the full extent and frequency of risks associated with the device;

q.    Failing to respond promptly and appropriately to reports of adverse events associated with ParaGard;

r.    Failing to properly and appropriately monitor the post-market performance of ParaGard;

s.    Concealing from the FDA, the general medical community and/or physicians their full knowledge and experience regarding the full extent and frequency of risks associated with the product;

t.    Promoting, marketing, and/or advertising ParaGard in a misleading manner, given their knowledge and experience of potential harmful effects;

u.    Failing to fulfill the standard of care required of a reasonable, prudent, drug manufacturer;

v.    Failing to disclose to the medical community in an appropriate and timely manner, facts relative to the potential of ParaGard to be harmful to patients; and

w.    Failing to respond, react, or report appropriately to reports of ParaGard causing harm to patients, including breakage and removal surgery.

84.    A reasonable manufacturer, distributor, and/or seller under the same or similar circumstances would not have engaged in the aforementioned acts and omissions.

85.    As a direct and proximate result of Defendants' design, manufacture, marketing, sale and/or distribution of the ParaGard, Plaintiff suffered severe and permanent physical and emotional injuries, endured pain and suffering, required surgical removal of the broken piece of

the device, and has suffered economic loss, including incurring significant expenses for medical care and treatment.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## COUNT II: STRICT LIABILITY - DESIGN DEFECT

86.     Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

87.     The ParaGard is inherently dangerous and defective, not reasonably safe for its intended use, and does not meet or perform to the expectations of patients and their health care providers.

88.     Defendants have a duty to provide adequate warnings and instructions for ParaGard, to use reasonable care to design a product that is not unreasonably dangerous to users.

89.     Defendants were and are engaged in the business of selling ParaGard in the State of West Virginia.

90.     ParaGard, which was manufactured, marketed, promoted, and sold by Defendants, was expected to, and did, reach Plaintiff without substantial change in the condition in which it was sold.

91.     The foreseeable risks associated with the design or formulation of ParaGard include, but are not limited to, the fact that the design or formulation of ParaGard is more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

92.    Defendants' failure to give an adequate warning regarding risks associated with ParaGard renders the device unreasonably dangerous.

93.    Defendants manufactured, marketed, promoted and sold a product that was not merchantable and/or reasonably suited to the use intended, and its condition when sold was the proximate cause of the injuries sustained by the Plaintiff.

94.    Defendants placed ParaGard into the stream of commerce with wanton and reckless disregard for the public safety.

95.    Defendants knew or should have known that physicians and other healthcare providers began commonly utilizing this product as a safe and effective device for temporary contraception despite its lack of efficacy and potential for serious side effects.

96.    There are products on the market with safer alternative designs in that they provide equal or greater efficacy and far less risk.

97.    As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendants, Plaintiff suffered severe and permanent physical and emotional injuries, endured pain and suffering, required surgical removal of the broken piece of the device, and has suffered economic loss, including incurring significant expenses for medical care and treatment.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## COUNT III: STRICT LIABILITY MANUFACTURING DEFECT

98.    Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

99.     Defendants designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, performed pharmacovigilance, distributed and sold the ParaGard IUD that was inserted into the Plaintiff.

100.    The ParaGard IUD inserted in Plaintiff contained a condition or conditions, which Defendants did not intend, at the time the ParaGard IUD left Defendants' control and possession.

101.     Defendants' failure to give an adequate warning constitutes a defect in a product and also renders the manufacturer liable for selling a product in an unreasonably dangerous manner.

102.     Plaintiff and Plaintiffs' healthcare providers used the product in a manner consistent with and reasonably foreseeable to Defendants.

103.    As a result of this condition or these conditions, the product failed to perform as safely as the ordinary consumer would expect, causing injury, when used in a reasonably foreseeable manner.

104.     The ParaGard was defectively and/or improperly manufactured, rendering it defective and unreasonably dangerous and hazardous to Plaintiff.

105.    As a result of the manufacturing defects, the ParaGard creates risks to the health and safety of the patients that are far more significant and devastating than the risks posed by other products and procedures available to treat the corresponding medical conditions, and which far outweigh the utility of the ParaGard.

106.    Defendants intentionally and recklessly manufactured the ParaGard with wanton and willful disregard for the rights and health of the Plaintiffs and others, and with malice, placing their economic interests above the health and safety of the Plaintiff and others.

107.    As a proximate result of Defendants manufacture of the ParaGard, Plaintiff suffered severe and permanent physical and emotional injuries, endured pain and suffering, required surgical removal of the broken piece of the device, and has suffered economic loss, including incurring significant expenses for medical care and treatment.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## COUNT IV: STRICT LIABILITY FAILURE TO WARN

108.    Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

109.    ParaGard is a defective and therefore unreasonably dangerous product, because its labeling fails to adequately warn consumers and prescribers of, among other things, the risk of breakage, potentially necessitating surgical removal, including, but not limited to, surgical removal of internal organs, hysterectomy, and loss of fertility and reproductive health.

110.    Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce the pharmaceutical, ParaGard, and in the course of same, directly advertised or marketed the product to consumers or persons responsible for consumers, and therefore had a duty to warn of the risks associated with the use of ParaGard.

111.    ParaGard was under the exclusive control of Defendants and was unaccompanied by appropriate warnings regarding all of the risks associated with its use. The warnings given did not accurately reflect the risk, incidence, symptoms, scope or severity of such injuries to the

consumer or physicians. The promotional activities of Defendants further diluted or minimized the warnings given with the product.

112.    Defendants downplayed the serious and dangerous side effects of ParaGard to encourage sales of the product; consequently, Defendants placed its profits above its customers' safety.

113.    ParaGard was defective and unreasonably dangerous when it left the possession of Defendants in that it contained warnings insufficient to alert Plaintiff to the dangerous risks and reactions associated with it. Even though Defendants knew or should have known of the risks associated with ParaGard, they still failed to provide warnings that accurately reflected the signs, symptoms, incident, scope, or severity of the risks associated with the product.

114.    Plaintiff, through her physicians, used ParaGard as intended and as indicated by the package labeling and instructions or in a reasonably foreseeable manner.

115.    Plaintiff could not have discovered any defect in ParaGard through the exercise of reasonable care.

116.    Defendants, as manufacturers of pharmaceutical drugs, are held to the level of knowledge of an expert in the field and, further, Defendants had knowledge of the dangerous risks and side effects of the ParaGard.

117.    Plaintiff did not have the same knowledge as Defendants and no adequate warning was communicated to her physician(s).

118.     Defendants had a continuing duty to warn consumers, including Plaintiff, her physicians, and the medical community of the dangers associated with the ParaGard, and by negligently and/or wantonly failing to adequately warn of the dangers associated with its use, Defendants breached their duty.

119.    Although Defendants knew, or were reckless in not knowing, of the defective nature of the ParaGard, they continued to design, manufacture, market, and sell the product without providing adequate warnings and instructions concerning the use of the ParaGard so as to maximize sales and profits at the expense of the public health and safety, in knowing, conscious, and deliberate disregard of the foreseeable harm caused by the ParaGard.

120.    As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendants, Plaintiff suffered severe and permanent physical and emotional injuries, endured pain and suffering, required surgical removal of the broken piece of the ParaGard IUD, and has suffered economic loss, including incurring significant expenses for medical care and treatment.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## COUNT V: COMMON LAW FRAUD

121.    Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

122.    Defendants falsely and fraudulently represented and continue to represent to the medical and healthcare community, Plaintiff and her physicians, and/or the public that the ParaGard IUD had been appropriately tested and was found to be safe and effective.

123.    The representations made by Defendants were, in fact, false. When Defendants made their representations, they knew and/or had reason to know that those representations were false, and they willfully, wantonly, and recklessly disregarded the inaccuracies in their representations and the dangers and health risks to users of the ParaGard.

124.    These representations were made by Defendants with the intent of defrauding and deceiving the medical community, Plaintiff, and the public, and also inducing the medical community, Plaintiff, Plaintiff's physicians, and/or the public, to recommend, prescribe, dispense, and purchase the ParaGard for use as a form of long-term birth control, all of which evidenced a callous, reckless, willful, and depraved indifference to the health, safety, and welfare of Plaintiff.

125.    In representations to Plaintiff and/or to her healthcare providers, Defendants fraudulently concealed and intentionally omitted the following material information:

a.    That the ParaGard was not as safe as other products and procedures available to aid in the long-term prevention of pregnancy;

b.    That the risk of adverse events with the ParaGard was higher than with other products and procedures available for birth control;

c.    The ParaGard IUD was not adequately tested;

d.    That the limited clinical testing for ParaGard revealed a higher risk of adverse events, above and beyond those associated with other products and procedures available for birth control;

e.    That Defendants deliberately failed to follow up on the adverse results from clinical studies and/or formal and informal reports from physicians and/or other healthcare providers and either ignored, concealed and/or misrepresented those findings;

f.    That Defendants were aware of dangers in the ParaGard IUD, in addition to and above and beyond those associated with other products and procedures available for birth control;

g.    That the ParaGard IUD was defective, and that it caused dangerous and adverse side effects, including but not limited to unacceptable incidence of breakage upon removal;

h.    That when the ParaGard IUD needed to be removed, the removal procedure had a very high failure rate and/or needed to be performed repeatedly;

i.    That the ParaGard IUD was manufactured negligently;

j.    That the ParaGard IUD was manufactured defectively; and

k.    That the ParaGard IUD was designed negligently and designed defectively.

126.    The above misrepresentations were material misrepresentations or omissions, in that they operated as inducements to the Plaintiff to select ParaGard as her birth control method and ultimately to her insertion of the product.

127.    On July 25, 2019, the FDA authored a letter to Defendants, stating Defendants' ParaGard television advertisement was false or misleading as to the risks of ParaGard and declared it violative of 21 USC 352(n); 331(a); 321(n); 21 CFR 202.1(e)(1); e(5).

128.    Defendants were under a duty to disclose to Plaintiff and her physicians, the defective nature of the ParaGard, including but not limited to, the risk of breakage prior to and upon removal, which could result in permanent injury.

129.    Defendants had sole access to material facts concerning the defective nature of the products and their propensity to cause serious and dangerous side effects and hence, cause dangerous injuries and damage to persons who used the ParaGard, such as Plaintiff.

130.    Defendants' concealment and omissions of material facts concerning the safety of the ParaGard IUD were made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiff, Plaintiff's physicians, surgeons and healthcare providers and to induce them to purchase,

prescribe, and/or dispense the ParaGard IUD; and/or to mislead them into reliance upon and cause them to use the ParaGard IUD.

131.    At the time these representations were made by Defendants, and at the time Plaintiff and/or her physicians, used the ParaGard IUD, Plaintiff and/or her physicians were unaware of the falsehood of these representations, and reasonably believed them to be true.

132.    Defendants knew and had reason to know that the ParaGard IUD could and would cause severe and grievous personal injury to the users of the product and was inherently dangerous in a manner that exceeded any purported, inaccurate, or otherwise downplayed warnings.

133.    In reliance upon these false representations, Plaintiff and her physicians were induced to, and did use the ParaGard IUD, thereby causing severe and permanent personal injuries and damages to Plaintiff. Defendants knew or had reason to know that the Plaintiff and her physicians and other healthcare providers had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding the use of the ParaGard IUD, as described in detail herein.

134.    Plaintiff and her physicians reasonably relied on facts provided by Defendants which foreseeably and purposefully suppressed and concealed facts that were critical to understanding the real dangers inherent to the use of the ParaGard IUD.

135.    Having knowledge based on their research and testing, or lack thereof, Defendants blatantly and intentionally distributed false information, including but not limited to assurances to Plaintiff, the public, and Plaintiff's healthcare providers and physicians, that the ParaGard IUD was safe for use as a means of providing temporary, yet long-term birth control and was as safe or safer than other product and/or procedures available and/or on the market. As a result of Defendants' research and testing, or lack thereof, Defendants intentionally omitted, concealed and

suppressed the dissemination of certain results of testing and research to healthcare professionals, Plaintiff, her physicians, and the public at large.

136.    Defendants had a duty when disseminating information to the public to disseminate truthful information; and a parallel duty not to deceive the public, Plaintiff, and/or her physicians.

137.    The information distributed to the public, the medical community, Plaintiff and her physicians by Defendants included, but was not limited to websites, information presented at medical and professional meetings, information disseminated by sales representatives to physicians and other medical care providers, professional literature, reports, press releases, advertising campaigns, television commercials, print advertisements, and/or other commercial media, and contained material representations which were false and misleading, as well as omissions and concealments of the truth about the dangers of the use of the ParaGard IUD.

138.    These representations, and others made by Defendants, were false when made and/or were made with the pretense of actual knowledge when such knowledge did not actually exist and were made recklessly and without regard to the true facts.

139.    Defendants recklessly and/or intentionally falsely represented the dangerous and serious health and safety concerns inherent in the use of the ParaGard to Plaintiff, her physicians and the public at large, for the purpose of influencing the sales of products known to be dangerous and defective, and/or not as safe as other alternatives.

140.    At the time the representations were made, Plaintiff and her healthcare providers did not know the truth about the dangers and serious health and/or safety risks inherent in the use of the ParaGard.

141.    Plaintiff did not discover the true facts about the dangers and serious health and/or safety risks, nor did Plaintiff discover the false representations of Defendants, nor would Plaintiff

with reasonable diligence have discovered the true facts about Defendants' misrepresentations at the time when the ParaGard IUD was inserted into her uterine cavity.

142.    Had Plaintiff known the true facts about the dangers and serious health and/or safety risks of the ParaGard IUD, neither Plaintiff nor her physician would not have purchased, used, or relied on Defendants' representations and omissions concerning the ParaGard IUD.

143.    As a proximate result of Defendants' design, manufacture, marketing, sale and/or distribution of the ParaGard IUD, as a direct and proximate result of one or more of these wrongful acts or omissions of the Defendants, Plaintiff suffered severe and permanent physical and emotional injuries, endured pain and suffering, required surgical removal of the broken piece of the device, and has suffered economic loss, including incurring significant expenses for medical care and treatment.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## COUNT VI: NEGLIGENT MISREPRESENTATION

144.    Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

145.    At relevant times, Defendants negligently provided Plaintiff, her healthcare providers, and the general medical community with false or incorrect information or omitted or failed to disclose material information concerning the ParaGard IUD, including, but not limited to, misrepresentations regarding the safety and risks of the ParaGard IUD.

146.    The information distributed by Defendants to the public, the medical community, the Plaintiff and her healthcare providers, including advertising campaigns, labeling materials,

print advertisements, commercial media, was false and misleading and contained omissions and concealment of truth about the dangers of the ParaGard IUD.

147.    Defendants' intent and purpose in making these misrepresentations was to deceive and defraud the public and the medical community, including Plaintiff and Plaintiff's healthcare providers; to falsely assure them of the quality and safety of the ParaGard IUD and the induce the public and medical community, including Plaintiff and her healthcare provider to request, recommend, prescribe, insert, purchase and continue to use the ParaGard IUD.

148.    Defendants had a duty to accurately and truthfully represent to the medical and healthcare community, medical drug manufacturers, Plaintiff, her healthcare providers and the public, that the ParaGard IUD had been tested and found to be safe and effective for long term birth control.

149.    The representations made by Defendants were, in fact, false. The ParaGard IUD was not safe for human use in its intended and reasonably foreseeable manner. Use of the ParaGard IUD is dangerous as there is a risk that it may fracture upon removal causing significant injury.

150.    In reliance upon the false and negligent misrepresentations and omissions made by Defendants, Plaintiff and Plaintiff's healthcare providers were induced to, and did use the ParaGard IUD, thereby causing Plaintiff to endure severe and permanent injuries.

151.    Defendants knew and had reason to know that the Plaintiff, Plaintiff's healthcare providers, and the general medical community did not have the ability to determine the true facts which were intentionally and/or negligently concealed and misrepresented by Defendants.

152.    Plaintiff and her healthcare providers would not have recommended, and inserted ParaGard IUD had the true facts not been concealed by Defendants.

153.     Defendants had sole access to the material facts concerning the defective nature of the ParaGard IUD and its propensity to cause serious and dangerous side injuries.

154.     At the time Defendants failed to disclose and misrepresented the foregoing facts, and at the time Plaintiff was implanted with the ParaGard IUD, Plaintiff and her healthcare providers were unaware of Defendants' negligent misrepresentations and omissions.

155.     Defendants failed to exercise ordinary care in making representations concerning the ParaGard IUD while they were involved in their manufacture, sale, testing, quality assurance, quality control, and distribution in interstate commerce, because they negligently misrepresented the ParaGard's high risk of unreasonable and dangerous adverse side effects.

156.     Defendants breached their duty to Plaintiff, her physicians, and the medical and healthcare community, by representing that the ParaGard IUD has no serious side effects different from older generations of similar products or procedures.

157.     Plaintiff and Plaintiff's healthcare providers reasonably relied upon the misrepresentations and omissions made by Defendants, where they concealed and misrepresented facts that were critical to understanding the true dangers inherent in the use of the ParaGard IUD.

158.     Plaintiff and Plaintiff's healthcare providers' reliance on the foregoing misrepresentations and omissions was the direct and proximate cause of Plaintiffs injuries.

159.     Defendants knew, and had reason to know, that the ParaGard had been insufficiently tested, or had not been tested at all, that the products lacked adequate and accurate warnings, that they created a high risk, and/or higher than acceptable risk, and/or higher than reported risk that they represented a risk of adverse side effects, including, pain and suffering, surgery to remove the product, and other severe and personal injuries, which are permanent and lasting in nature.

160.     As a proximate result of Defendants' design, manufacture, marketing, sale and/or distribution of the ParaGard, Plaintiff suffered severe and permanent physical and emotional injuries, endured pain and suffering, required surgical removal of the broken piece of the ParaGard IUD, and has suffered economic loss, including incurring significant expenses for medical care and treatment.

161.     Plaintiff and Plaintiff's healthcare providers' reliance on the foregoing misrepresentations and omissions was a substantial factor in causing Plaintiff's harm.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## COUNT VII : BREACH OF EXPRESS WARRANTY

162.     Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

163.     At relevant times, Defendants made assurances that the ParaGard IUD was safe and fit for its intended use by consumers, that it was of merchantable quality, that its side effects were minimal and comparable to other treatments for long-term birth control, and that they were adequately tested and fit for their intended use.

164.     Plaintiff chose the ParaGard IUD based upon Defendants' warranties and representations regarding the safety and fitness of the ParaGard device.

165.     Plaintiff reasonably relied upon Defendants' express warranties and guarantees that the ParaGard IUD was safe, merchantable, and reasonably fit for its intended purpose.

166.     Defendant breached these express warranties because the product inserted in Plaintiff was unreasonably dangerous and defective and not as Defendants had represented.

167.    As a direct and proximate result of Defendant's breaches of the aforementioned express warranties, Plaintiff was caused and in the future will be caused to suffer severe personal injuries, pain and suffering, severe emotional distress, financial or economic loss, including, but not limited to, obligations for medical services and expenses, and other damages.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## COUNT VIII: BREACH OF IMPLIED WARRANTY

168.    Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

169.    Defendant impliedly warranted that the ParaGard IUD was merchantable and was fit for the ordinary purposes for which it was intended.

170.    When the ParaGard IUD was inserted in Plaintiff for temporary birth control, the ParaGard was being used for the ordinary purpose for which it was intended.

171.    Plaintiff relied upon Defendants' implied warranty of merchantability in consenting to have the ParaGard inserted in her.

172.    Defendants breached this implied warranty of merchantability because the ParaGard IUD was neither merchantable nor suited for its intended use as warranted.

173.    Defendants' breach of their implied warranty resulted in the implantation of unreasonably dangerous and defective products in Plaintiff's body, placing Plaintiff's health and safety in jeopardy.

174.    As a direct and proximate result of Defendant's breach of the aforementioned implied warranties, Plaintiff was caused and/or in the future will be caused to suffer severe

personal injuries, pain and suffering, severe emotional distress, financial or economic loss, including but not limited to obligations for medical services and expenses, present and future lost wages, and other damages.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## COUNT IX: VIOLATION OF CONSUMER PROTECTION LAWS

175.    Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

176.    This Count is brought pursuant to the West Virginia Consumer Credit and Protection Act ("WVCCPA"), Section 46A-6-101, et seq. West Virginia Statutes, which was enacted to prohibit and protect West Virginians from deceptive and unfair conduct.

177.    Defendants used deception, false pretense, false promised and/or misrepresentations, and/or the concealment, suppression and/or omission of material facts with the intent that Plaintiff and other rely upon such concealment, suppression, or omission, in connection with the ParaGard IUD.

178.    Defendants knowingly and willfully misrepresented ParaGard to Plaintiff, and public at large, as safe and fit for its intended use by consumers, that it was of merchantable quality that its side effects were minimal and comparable to other treatments for long-term birth control, and that they were adequately tested and fit for their intended use, in violation of WVCCPA § 46A-6-104.

179.     Defendants knowingly and willfully concealed their knowledge and information regarding complaints about ParaGard, including but not limited to instances of breakage, instances of perforation, and instances of migration, in violation of WVCCPA § 46A-6-104.

180.     At all times material hereto, Plaintiff was a consumer within the meaning of WVCCPA, and is entitled to relief under WVCCPA in accordance with West Virginia Code.

181.     Plaintiff is an individual who has purchased the ParaGard device for personal use.

182.     At all times material hereto, Defendant conducted trade and/or commerce within the meaning of WVCCPA.

183.     Plaintiff has been directly and proximately injured by the conduct of Defendants, and such injury includes severe and permanent physical and emotional injuries, endured pain and suffering, required surgical removal of the broken piece of the device, and has suffered economic loss, including incurring significant expenses for medical care and treatment.

184.     In accordance with WVCCPA § 46A-6-104, Plaintiff seeks the recovery of damages against Defendants, plus attorney's fees and court costs.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## COUNT X – GROSS NEGLIGENCE

185.     Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

186.     The wrongs done by Defendants were aggravated by the kind of malice, fraud, and grossly negligent disregard for the rights of others, the public, and Plaintiff , for which the law would allow, and which Plaintiff  will seek at the appropriate time under governing law for the

imposition of exemplary damages, in that Defendants' conduct was specifically intended to cause substantial injury to Plaintiff; or when viewed objectively from Defendants' standpoint at the time of the conduct, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and Defendants were actually, subjectively aware of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others; or included material representations that were false, with Defendants, knowing that they were false or with reckless disregard as to the truth and as a positive assertion, with the intent that the representation is acted on by Plaintiff.

187.    Plaintiff and her physicians relied on the representations of Defendants and suffered injury as a proximate result of this reliance.

188.    Plaintiff therefore will seek to assert claims for exemplary damages at the appropriate time under governing law in an amount within the jurisdictional limits of the Court.

189.    Plaintiff also alleges that the acts and omissions of Defendants, whether taken singularly or in combination with others, constitute gross negligence that proximately caused that injuries to Plaintiff.  In that regard, Plaintiff will seek exemplary damages in an amount that would punish Defendants for their conduct, and which would deter other manufacturers from engaging in such misconduct in the future.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## COUNT XI: NEGLIGENCE PER SE

(Violation of West Virginia's Code § 46A-6-102 *et seq*.; and 21 C.F.R. §§202, 203, 314.80, 314.81, and 314.50)

190.    Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

191.    At all times herein mentioned, Defendants had an obligation not to violate the law, including the Federal Food, Drug and Cosmetic Act and the applicable regulations, in the manufacture, design, testing, production, processing, assembling, inspection, research, promotion, advertising, distribution, marketing, promotion, labeling, packaging, preparation for use, consulting, sale, warning and post-sale warning and other communications of the risks and dangers of ParaGard.

192.    By reason of its conduct as alleged herein, Defendants violated provisions of statutes and regulations, including but not limited to, the following:

a.    Defendants violated West Virginia's Code § 46A-6-102 *et seq*; 21 C.F.R. § 202.1(d)(1); (e)(5); and 21 C.F.R. § 203, *et seq*. by creating false and misleading representations about the risks associated with ParaGard and creating misleading impressions about the safety of ParaGard.

b.    Defendants violated 21 C.F.R. § 314.80 *et seq*. by failing to uphold their post-marketing reporting of adverse drug experiences.

c.    Defendants violated 21 C.F.R. § 314.81 et seq. by failing to uphold their post-marketing reporting of adverse drug experiences.

d.    Defendants violated 21 C.F.R. § 314.50, et seq. by failing to abide by their new drug application supplement requirements.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## COUNT XII: PUNITIVE DAMAGES

193.     Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

194.     At times material hereto, Defendants knew or should have known that their ParaGard, as designed, manufactured, assembled, sold and/or distributed was inherently dangerous.

195.     At times material hereto, Defendants attempted to misrepresent and did misrepresent facts concerning the safety of their ParaGard.

196.     Defendants' misrepresentations included knowingly withholding material information from the public and consumers alike, including Plaintiff, concerning the safety of the ParaGard.

197.     At times material hereto, Defendants knew and recklessly disregarded the fact that their ParaGard could cause serious, disabling, and permanent injuries to individuals such as Plaintiff.

198.     Notwithstanding the foregoing, Defendants continued to aggressively market and promote their ParaGard IUD, without disclosing the risks and/or adequately warning of risks.

199.     As a direct and proximate result of Defendants' willful, wanton, careless, reckless, conscious, and deliberate disregard for the rights and safety of their consumers, Plaintiff suffered severe and permanent physical and emotional injuries, endured pain and suffering, required surgical removal of the broken piece of the device, and has suffered economic loss, including incurring significant expenses for medical care and treatment.

200.     Defendants' aforesaid conduct was committed with knowing, conscious, careless, reckless, willful, wanton, and deliberate disregard for the rights and safety of consumers, including

Plaintiff, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish Defendants and deter them from similar conduct in the future.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## PRAYER FOR RELIEF

201.    Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein and further prays:

So far as the law and this Court allows, Plaintiff demands judgment against each Defendant on each count as follows:

a. All available compensatory damages for the described losses with respect to each cause of action;

b. Past and future medical expenses, as well as the cost associated with past and future life care;

c. Past and future lost wages and loss of earning capacity;

d. Past and future emotional distress;

e. Consequential damages;

f. All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

g. Disgorgement of profits obtained through unjust enrichment;

h. Restitution;

i. Punitive damages and treble damages with respect to each cause of action;

j. Reasonable attorneys' fees where recoverable;

k. Costs of this action;

l. Pre-judgment and all other interest recoverable; and

m. Such other additional, further, and general relief as Plaintiff may be entitled to in law or in equity as justice so requires.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury as to all issues.

Respectfully Submitted,

BY: <u>/s/ *John D. Hurst*</u>
John D. Hurst, Esq. (WVSB #10861)
Jacob R. Stout, Esq. (WVSB #12573)
MOTLEY RICE LLC
50 Clay Street, Suite 1
Morgantown, WV  26501
Phone:  (304) 413-0456
Fax:  (304) 413-0458
ATTORNEYS FOR PLAINTIFF